# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| _____ )<br>LIBERTARIAN PARTY OF MAINE, INC., )<br>JORGE MADERAL, SUSAN POULIN, )<br>SHAWN LEVASSEUR, CHRISTOPHER )<br>LYONS, ERIC GRANT, AND CHARLES )<br>JAQUES, )<br> )<br>Plaintiffs )<br> )<br>v. )<br> )<br>MATTHEW DUNLAP, Secretary of State )<br>for the State of Maine, in his official )<br>capacity, JULIE FLYNN, Deputy Secretary )<br>of State for the State of Maine, in her official )<br>capacity, TRACY WILLETT, Assistant Director, )<br>Division of Elections, in her official capacity, )<br>and the MAINE DEPARTMENT OF )<br>THE SECRETARY OF STATE, )<br> )<br>Defendants )<br>_____ ) | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

NOW COME the Plaintiffs, Libertarian Party of Maine, Inc., Jorge Maderal, Susan Poulin, Shawn Levassuer, Christopher Lyons, Eric Grant, and Charles Jacques, by and through their undersigned counsel, and hereby complain against Defendants Matthew Dunlap, Julie Flynn, Tracy Willett, and Maine Department of the Secretary of State, as follows:

### THE PARTIES

1.      Plaintiff Libertarian Party of Maine, Inc. (hereinafter "LPME") is a Maine nonprofit corporation with a principal place of business in Brunswick, Maine.  Plaintiff LPME was established in 1998 for the principal purpose of promoting and implementing libertarian

ideas and principles, by, among other means, forming a libertarian political party in Maine, promoting the election of libertarian candidates for public office in Maine and more meaningful electoral choices for Maine voters, working for the election of the national Libertarian Party nominee for President and Vice President, conducting informational and educational activities, and supporting or opposing referenda and ballot initiatives.  Plaintiff LPME is affiliated with the Libertarian Party, the third largest political party organization in the United States, which participates in electoral politics and other civic and political activities across the nation.

2.      Plaintiff Jorge Maderal is an individual residing in the Town of Brunswick, County of Cumberland, and State of Maine.  Plaintiff Maderal is the President and Chair of LPME, and a member of the national Libertarian Party.  In December of 2014, Plaintiff Maderal and several other Maine citizens formally declared their intention to form the Libertarian Party of Maine pursuant to a process established under Maine law.

3.      Plaintiff Susan Poulin is an individual residing in the Town of Casco, County of Cumberland, and State of Maine.  Plaintiff Poulin is the Secretary of LPME, and a member of the national Libertarian Party.  In December of 2014, Plaintiff Poulin and several other Maine citizens formally declared their intention to form the Libertarian Party of Maine pursuant to a process established under Maine law.

4.      Plaintiff Shawn Levasseur is an individual residing in the City of Rockland, County of Knox, and State of Maine.  Plaintiff Levassuer is the Treasurer of LPME, and is a member of the national Libertarian Party.  In December of 2014, Plaintiff Levasseur and several other Maine citizens formally declared their intention to form the Libertarian Party of Maine pursuant to a process established under Maine law.

5.      Plaintiff Christopher Lyons is an individual residing in the Town of Brunswick, County of Cumberland, and State of Maine.  Plaintiff Lyons is a member of LPME and the national Libertarian Party.

6.      Plaintiff Eric Grant is an individual residing in the City of Biddeford, County of York, and State of Maine.  Plaintiff Lyons is a member of LPME and the national Libertarian Party.  In December of 2014, Plaintiff Lyons and several other Maine citizens formally declared their intention to form the Libertarian Party of Maine pursuant to a process established under Maine law.

7.      Plaintiff Charles Jacques is an individual residing in the Town of Brunswick, County of Cumberland, and State of Maine.  Plaintiff Jacques is a member of LPME and the national Libertarian Party.  In December of 2014, Plaintiff Jacques and several other Maine citizens formally declared their intention to form the Libertarian Party of Maine pursuant to a process established under Maine law.

8.      During the period from December 2014 through the present, each of the above named individual Plaintiffs officially enrolled as a member of the Libertarian Party in Maine and engaged in various other actions set forth more fully herein for the purposes, among others, establishing the Libertarian Party as a political party recognized by the Maine Secretary of State and entitled to participate in primary elections; engaging in content-based political expression and association; petitioning for redress of grievances; promoting Maine ballot access for federal, state and local Libertarian Party candidates; voting for and otherwise supporting the election of federal, state and local Libertarian Party candidates in the State of Maine; seeking election to federal, state or local office in Maine as a member of the

Libertarian Party; and otherwise availing themselves of all other rights, privileges, benefits and opportunities afforded to officially recognized political parties and their members.

9.     Defendant Matthew Dunlap (hereinafter "Secretary Dunlap", the "Secretary of State", or the "Secretary") is the Secretary of State for the State of Maine. Secretary Dunlap is a constitutional officer of the State of Maine and maintains an office in the City of Augusta, County of Kennebec and State of Maine. Among other functions, activities and responsibilities, the Secretary of State is charged with conducting Maine's system of state and federal elections in accordance with state and federal law; implementing and executing laws and regulations governing the voter registration and party enrollment process; maintaining a statewide voter registration and party enrollment database; and implementing and executing laws and regulations governing the qualification of political parties to participate in Maine's electoral process. With respect to all of the allegations and claims set forth in this Complaint, Secretary Dunlap acted in his official capacity under the color of state law, and is being sued in his official capacity only.

10.     Defendant Julie Flynn (hereinafter "Deputy Flynn") is the Deputy Secretary of State for the State of Maine. Deputy Flynn maintains an office in the City of Augusta, County of Kennebec and State of Maine. Deputy Flynn directs and oversees the Bureau of Corporations, Elections and Commissions, a division of the Maine Department of the Secretary of State. Among other functions, activities and responsibilities, Deputy Flynn is charged with conducting Maine's system of state and federal elections in accordance with state and federal law; implementing and executing laws and regulations governing the voter registration and party enrollment process; maintaining a statewide voter registration and party enrollment database; and implementing and executing laws and regulations governing the

qualification of political parties to participate in Maine's electoral process.  With respect to all of the allegations and claims set forth in this Complaint, Secretary Flynn acted in her official capacity under the color of state law, and is being sued in her official capacity only.

11.     Defendant Tracy Willet (hereinafter "Assistant Director Willett") is the Assistant Director of the Division of Elections within the Bureau of Corporations, Elections and Commissions, itself a division of the Maine Department of the Secretary of State. Assistant Director Willett maintains an office in the City of Augusta, County of Kennebec and State of Maine, and reports to Deputy Flynn and Secretary Dunlap.  With respect to all of the allegations and claims set forth in this Complaint, Assistant Director Willett acted in her official capacity under the color of state law, and is being sued in her official capacity only.

12.     Defendant Maine Department of the Secretary of State (hereinafter the "Department") is a Maine governmental agency having a principal place of business in the City of Augusta, County of Kennebec and State of Maine Augusta.  Among other functions and activities, the Department is charged with conducting Maine's system of state and federal elections in accordance with state and federal law; implementing and executing laws and regulations governing the voter registration and party enrollment process; maintaining a statewide voter registration and party enrollment database; and implementing and executing laws and regulations governing the qualification of political parties to participate in Maine's electoral process.

<u>JURISDICTION & VENUE</u>

13.     Venue is proper in this Court because all individual plaintiffs are residents of Maine, Plaintiff LPME is a Maine nonprofit corporation with a principal place of business in

the State of Maine, and all Defendants are located and otherwise maintain their offices in Maine.

14.     This Court has personal jurisdiction over the Defendants because they consist of three Maine governmental officials and a Maine governmental agency, whose activities, including but not limited to those pertinent to this lawsuit, are conducted wholly within the State of Maine.

15.     This Court has original subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the claims set forth herein arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

16.     There are no pending state court proceedings relating to any or all of the factual and/or legal claims asserted in this Complaint.

<u>FACTS COMMON TO ALL COUNTS</u>

***Maine's Statutory Scheme for Political Parties & Elections***

17.     In 2013, the Maine legislature enacted an amendment to its election laws requiring political parties not yet officially recognized by the State to enroll at least 5000 voters during the year before a general election as a condition for participating in the following year's primary elections.  21-A M.R.S.A. § 303.  Under Maine's new law, a group of citizens seeking to form a political party for the purpose of nominating and voting for candidates must certify their enrollment of the minimum number of voters no later than December 1st of the year before the general election, which is more than six (6) months prior to the primary election in question and more than eleven (11) months before the general election.  *Id*.  All enrollments in the new party must be secured over the span of eleven (11) months during an odd-numbered year when political attention and enthusiasm among the

6

general public is historically lowest. *Id.*

18.     Under the process governed by Maine's new election statute, the stakes are extremely high.  With the sole exception of the office of President of the United States, the primary election is the *exclusive* gateway to participation in Maine's general election for all political parties and their candidates, major and minor alike.  21-A M.R.S.A. § 331.  Unlike other states around the nation, Maine does not allow minor political parties to nominate candidates for federal, state or local office by holding a party convention.  Unsurprisingly, no minor party candidate for the U.S. House or Senate has gained access to the general election ballot in Maine during the past ninety (90) years.

19.     Primary elections in Maine are held on the second Tuesday in June during all general election (even-numbered) years.  21-A M.R.S.A. § 339.  In 2016, the primary election will be held on June 8.  *Id.*

20.     In order to seek the nomination of a political party in Maine and gain access to the June primary election ballot – and, if successful, gain access to the general election ballot – a candidate for public office must submit a nominating petition to the Secretary of State no later than March 15th of the even-numbered general election year.  21-A M.R.S.A. § 334.

***Plaintiffs' Efforts to Qualify for***
***Participation in Maine's Electoral & Political Process***

21.     In December of 2014, Plaintiffs LPME, Maderal and several other registered Maine voters formally declared their intent to form the "Libertarian Party of Maine" by enrollment pursuant to 21-A M.R.S.A. § 303, for the primary purpose of enabling Maine citizens to nominate and vote for Libertarian Party candidates and seek elective office as members of the Libertarian Party.  Two fully executed declarations were filed with the Secretary of State – the first on December 22, 2014 and the second on December 29, 2014 –

containing in total the names of ten (10) or more Maine voters who were not yet enrolled in a qualified party. True and correct copies of the two Declarations filed with the Secretary of State are attached hereto as Exhibit A.

22.     During the period from January 1, 2015 through November 30, 2015, the Plaintiffs procured the enrollment of 6,482 Maine voters in the Libertarian Party of Maine consistent with the requirements of Maine law, and submitted valid registration and enrollment forms for all 6,482 enrollees to the Department and to local election officials throughout the state. Throughout this process, Plaintiffs LPME and Maderal kept careful records of the total number of enrollments submitted as well as the exact number of enrollments for each municipality (determined by the town or city of residence of each enrollee). In total, the 6,482 Libertarian Party enrollees represented 356 different Maine towns and cities across the state.

23.     On December 1, 2015, Plaintiff Maderal filed a certification with the Secretary of State pursuant to 21-A M.R.S.A. § 303(2), stating that the Libertarian Party of Maine had enrolled at least 5,000 Maine voters as of that date. A true and correct copy of the December 1st Certification filed with the Secretary of State is attached hereto as Exhibit B. Further pursuant to that statute, the Secretary of State then had five (5) business days – or until December 8, 2015 – to verify the total number of enrollments and notify the Plaintiffs whether the Libertarian Party had met the requirements to participate in Maine's 2016 primary election. 21-A M.R.S.A. § 303(2).

24.     On or about December 8, 2015, at a meeting with Deputy Flynn and her assistant, Melissa Packard, at the Department's offices in Augusta, Plaintiff Maderal was told that the unofficial "verified" number of Maine voters enrolled in the Libertarian Party

according to the Department's records was only 4489, falling below the 5000 threshold for qualification under 21-A M.R.S.A. § 303.  Deputy Flynn and Ms. Packard told Plaintiff Maderal that an official verification would be prepared and provided to him in writing at a later date.

25.    The unofficial "verified" number of enrollments verbally reported to Maderal on December 8th raised numerous discrepancies and concerns, when compared with the number of voter registration and enrollment forms submitted to the Department and all the various town and cities prior to December 1st (totaling 6,482).  Of particular concern was what appeared to be an unusually high rejection/failure rate for the enrollments (amounting to some 31% of all enrollments submitted), and LPME's inability to verify whether the towns and cities actually received and processed all the forms submitted to them and to the Department.

26.    In a letter to Deputy Flynn dated December 14, 2015, Plaintiff LPME requested that the Secretary of State continue and extend the verification process under to Title 21-A MRS section 303(2), so as to: (a) afford the Libertarian Party and the Secretary of State a reasonable opportunity to investigate the extraordinarily high rejection/failure rate, and determine whether enrollments were wrongly rejected; (b) afford the Libertarian Party a reasonable opportunity to confirm that the verified enrollments and rejected enrollments equal the total number turned into the towns and cities; (c) afford the Libertarian Party a reasonable opportunity to remedy any defects in the enrollment forms; and (d) afford the various towns and cities a reasonable opportunity to complete processing of the enrollment forms and to seek any additional information that is needed from enrollees.  A true and correct copy of LPME's December 14, 2015 letter to Deputy Flynn is attached hereto as Exhibit C.

*Defendants' Disqualification of*
*the Libertarian Party and its Members*

27.     On December 18, 2015, thirteen (13) days after its December 1st certification pursuant to 21-A M.R.S.A. § 303(2), Plaintiff LPME received a letter from Deputy Flynn announcing that the Secretary was only able to verify 4,513 enrollments in the Libertarian Party of Maine, falling short of the 5,000 required to form a new political party and participate in the 2016 primary election.  As reflected in Deputy Flynn's December 18th letter, the Department was able to verify a number additional Libertarian Party enrollees subsequent to its December 8th meeting with Plaintiff Maderal by following up with several of the larger cities and towns, but did not have sufficient time to follow up all 356 different cities and towns across the state that received enrollment applications.  A true and correct copy of Deputy Flynn's December 18, 2015 letter to LPME is attached hereto as Exhibit D.

28.     For all elective offices *except* the Presidency of the United States, the Secretary's December 18th determination meant that the individual Plaintiffs and many thousands of others would be disqualified from nominating, voting for, or otherwise supporting any Libertarian Party candidates for federal, state or local office in Maine's 2016 primary and general elections.  *See* 21-A M.R.S.A. § 331.  It also meant that no Maine citizen would be allowed to run for any office in Maine as a member of the Libertarian Party.  *Id*.

29.     In her December 18th letter, Deputy Flynn further notified Plaintiff LPME that all Maine voters enrolled in the Libertarian Party would be "unenrolled" and that municipal election officials would be notified that the Libertarian Party is no longer an "acceptable" enrollment option.  *See* Exhibit D hereto.  Deputy Flynn also denied Plaintiff LPME's request for additional time to allow more enrollments to be processed and verified, and to address any irregularities and wrongfully rejected enrollments, stating, *inter alia*, that the governing

statute (21-A M.R.S.A. § 303) does not allow the Secretary to extend the verification process. *Id*.

30.     As further reflected in Deputy Flynn's December 18th letter, Plaintiff LPME and its members were not afforded the opportunity to request an administrative hearing of any kind prior the Secretary's final decision disqualifying the Libertarian Party from participation in the 2016 primary election, and nullifying the Libertarian Party enrollment status of several thousand Maine voters across the state.

31.     Upon information and belief, the Defendants failed to deliver to local election officials in a timely and expeditious manner all the voter registration and enrollment forms that were submitted by Plaintiffs LPME and Maderal directly to the Department during the period from January 1, 2015 through mid-October 2015.  As a result, the local election officials were unable or otherwise failed to complete the processing of such forms so that the total number of Libertarian Party enrollments could be verified by the Secretary of State within the 5-day deadline set forth in 21-A M.R.S.A. § 303(2).

32.     Further upon information and belief, the municipal registrars and other local election officials improperly invalidated or failed to process more than one thousand voter registration and enrollment forms that, under applicable laws and regulations, should have resulted in the successful enrollments of voters in the Libertarian Party of Maine.

33.     On December 22, 2015, Assistant Director Tracy Willet of the Division of Elections sent a memorandum to all municipal registrars and clerks throughout the state announcing that the Libertarian Party of Maine had failed to qualify as a political party eligible to participate in the 2016 primary election.  In that same memorandum, Assistant Director Willett notified all local election officials that the Department had: (a) removed the

Libertarian Party as an enrollment choice under the section for "qualified" parties in the Central Voter Registration database (hereinafter "CVR"); and (b) changed the enrollment status of all voters enrolled in the Libertarian Party to "Unenrolled."  Assistant Director Willett further directed and instructed the municipal registrars and clerks throughout the state to designate as "Unenrolled" any voters who submit applications requesting enrollment in the Libertarian Party.  A true and correct copy of Assistant Director Willett's December 22, 2015 memorandum to the municipal registrars and clerks is attached hereto as Exhibit E.

34.     As set forth more fully below, the actions and omissions of the Secretary of State and other named Defendants in failing to allow the Plaintiffs to nominate, vote for, and otherwise support Libertarian Party candidates in the coming general election year – or run for office as a member of the Libertarian Party – violates their constitutional rights under the First and Fourteenth Amendments to the United States Constitution.  The violation of Plaintiffs' constitutional rights arises not only from the arbitrary and capricious actions and omissions of Defendants and their agents complained of herein, but also from a new statutory scheme governing participation in Maine's electoral and political process that itself is unconstitutional, both on its face and as applied to the Plaintiffs in this circumstance.

### *Severe and Unnecessary Burdens Imposed Upon the Plaintiffs' Constitutional Rights by 21-A M.R.S.A. § 303*

#### *The December 1ˢᵗ Deadline for Party Qualification is Too Early*

35.     The December 1st deadline set forth in 21-A M.R.S.A. § 303(2) for enrolling the minimum number of voters in a newly declared political party places severe and unnecessary burdens on Plaintiffs' rights to express themselves, to associate politically, and to cast their votes effectively, among others, which rights are guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.  What is at stake is whether

the Libertarian Party and its members will be "allowed" to participate in this year's primary election to be held on the second Tuesday in June.

36.     Under Maine's statutory election scheme, participation in the primary election means, *inter alia*, the right to nominate candidates for federal, state or local office; to seek elective office as a party candidate; and to vote for and otherwise support party candidates in the general election.  With the sole exception of the office of President of the United States, the primary election is the <u>*exclusive*</u> gateway under Maine law to these essential rights and liberties for political parties, their members and their candidates.  *See* 21-A M.R.S.A. § 331. Maine law affords <u>*no other mechanism*</u> for minor political parties and their members to gain access to the ballot for November's general election.

37.     Section 303(2) of Title 21-A requires that a minor political party and its members obtain not less than 5,000 enrollments more than six (6) months before the primary election – and more than eleven (11) months before the general election – in order to be allowed participate in the primary election.  It also requires a minor political party and its members to seek public recognition – and enroll not less than 5,000 voters – exclusively during an odd-numbered year when public attention to and enthusiasm for the political process is historically lowest, and when the issues for the coming general election year are not yet full formed.  The severe burdens imposed on the fundamental constitutional rights and liberties of the Plaintiffs by this extremely early deadline are not necessary to further any legitimate state interest.

*The 5-Day Verification Deadline is Too Short*

38.     As applied to the circumstances of this case, the 5-day verification deadline set forth in 21-A M.R.S.A. § 303(2) places severe and unnecessary burdens on Plaintiffs' rights

to express themselves politically, to associate politically, and to cast their votes effectively, among others, which rights are guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.  Under the statute, the Secretary of State has only five (5) business days from the time the prospective political party declares the enrollment of at least 5,000 voters to verify the total number of enrollees in that party.  As demonstrated by the experience of the Plaintiffs in this case, five business days would only be a sufficient amount of time if the prospective political party and its members collected and submitted the necessary number of enrollments several weeks if not months before making a declaration under Section 303(2), which declaration must be made no later than December 1st of the year before the general election.

39.    The 5-day verification deadline set forth in Section 303(2) thus burdens Plaintiffs' fundamental rights in at least three different respects: (a) it is a set up for failure with regard to any minor party and its members, such as the Plaintiffs, who enroll voters during the several weeks leading up to the December 1st deadline so as to take full advantage of the limited time allotted for reaching the 5,000 mark; (b) it forces a minor party and its members to collect and submit not less than 5000 enrollments several weeks if not months before it makes a declaration under Section 303(2), which has the effect of further shortening the already limited amount of time for the enrollment drive afforded by the December 1st deadline; and (c) it fails to provide adequate notice to a prospective political party and its members that they should not actually rely on the December 1st date set forth in Section 303(2) as a deadline for completing their enrollment drive, if they want to ensure that all of the enrollees have been processed by local officials and entered in the Department's records by the time the Secretary of State is require to verify the total number of enrollees.

40.     The severe burdens imposed on the fundamental constitutional rights and liberties of the Plaintiffs by the 5-day verification deadline set forth in 21-A M.R.S.A. § 303(2) are not necessary to further any legitimate state interest.

*The Statute Fails to Afford New Declared Parties and their*
*Members the Opportunity for an Administrative Hearing*
*Prior to the Secretary's Final Disqualification Decision & Action*

41.     The lack of any provision in 21-A M.R.S.A. § 303 affording minor parties or their members a right to an administrative hearing – prior to being stripped of their enrollment status and being deprived of the right to participate in the primary election process – places severe and unnecessary burdens on Plaintiffs' rights to express themselves politically, to associate politically, and to cast their votes effectively, among others, which rights are guaranteed to them under the First and Fourteenth Amendments to the United States Constitution.  The severe burdens imposed on the fundamental constitutional rights and liberties of the Plaintiffs by the failure to provide for an administrative hearing are not necessary to further any legitimate state interest.

*Plaintiffs and Thousands of Others Will Suffer Irreparable Harm*
*if They are Stripped of their Party Enrollment and*
*Denied the Right to Participate in Maine's Primary Elections*

42.     If Plaintiffs and thousands of other Maine citizens around the state are stripped of their Libertarian Party enrollment and denied the right to participate in Maine's 2016 primary elections, they will suffer irreparable harm in the form of the irretrievable loss of precious rights and liberties afforded to them under the First and Fourteenth Amendments of the United States Constitution.  As set forth above, pursuant to Maine's statutory scheme governing political parties and elections, the primary election is the sole and exclusive gateway for political parties and their members to participate in Maine's established system

for electing candidates to federal state and local office.  In the absence of the injunctive relief requested herein, Plaintiffs and thousands of other Maine citizens will be prohibited from nominating, voting for, and otherwise supporting Libertarian Party candidates in Maine's 2016 elections, or from seeking elective office as a member of the Libertarian Party.

### COUNT I

**Violation and Deprivation of Plaintiffs' Rights Under the
First & Fourteenth Amendments of the United States Constitution
(*December 1st Qualification Deadline Too Early*)**

**(*Relief Requested Pursuant to 42 U.S.C. § 1983 et seq.,
the First and Fourteenth Amendments, and 28 U.S.C. § 2201 et seq.*)**

43.     Plaintiffs repeat and restate the allegations in paragraphs 1-42 as if fully set forth herein.

44.     As set forth herein, the December 1st deadline set forth in 21-A M.R.S.A. § 303(2) – and the Defendants' application and enforcement of same – places severe and unnecessary burdens on Plaintiffs' rights to express themselves, to associate politically, and to cast their votes effectively, among others, and is not necessary to further any legitimate state interest.

45.     Pursuant to well-established judicial precedent, the application of such an early deadline to the Plaintiffs – comprised of a minor political party and its members – violates and otherwise serves to deprive Plaintiffs of their rights under the First and Fourteenth Amendments to the United States Constitution.

46.     At all relevant times herein, Defendants were acting in their official capacities under color of law.

47.     Pursuant to 42 U.S.C. § 1983 et seq., the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. 2201 et seq., Plaintiffs are entitled to

declaratory and injunctive relief as is necessary to fully restore their constitutional rights and end all future deprivations by the Defendants thereof.

48.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.     Enter a declaratory judgment proclaiming that the December 1st certification deadline set forth in 21-A M.R.S.A. § 303 is unconstitutional, on its face or as applied to the Plaintiffs, in that it violates and otherwise serves to deprive Plaintiffs and thousands of other Maine citizens of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution;

B.     Enter a declaratory judgment proclaiming that Defendants, while acting under color of law, subjected Plaintiffs and/or caused Plaintiffs to be subjected to a deprivation of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution, rendering them liable to the Plaintiffs therefor under 42 U.S.C. § 1983 et seq.;

C.     Enter an injunction requiring the Defendants to take all actions as are necessary to allow Maine voters to enroll as members of the Libertarian Party and to nominate, vote for, and seek elective office as Libertarian Party candidates in the coming general election year, including, without limitation: (1) immediately restoring the enrollment status of all Maine voters previously enrolled in the Libertarian Party who were stripped of their party enrollment by the Secretary in December of 2015; (2) instructing all municipal registrars and clerks to accept the applications of otherwise qualified Maine citizens seeking to enroll as members of the Libertarian Party, including but not limited to all applications

submitted at any time after December 1, 2015; (3) allowing Plaintiffs to re-certify that they

have enrolled at least 5,000 voters in the Libertarian Party within a reasonable time in

advance of Maine's June 2016 primary election; and (4) allowing the Libertarian Party to

participate in Maine's June 2016 primary election upon verification by the Secretary, within a

reasonable time in advance of that election, that there are at least 5,000 Maine voters enrolled

in the Libertarian Party;

        D.     Enter an injunction requiring and directing the Defendants

to refrain from taking any and all actions that would interfere with the rights of Maine voters

to enroll as members of the Libertarian Party and to nominate, vote for, support, and seek

elective office as Libertarian Party candidates in the coming general election year;

        E.     Order that Defendant Maine Secretary of State to pay the reasonable

attorneys' fees and costs incurred by the Plaintiffs in bringing and prosecuting this action for

the purpose of vindicating and enforcing their constitutional rights; and

        F.     Award such other and further relief as is just and proper.

## COUNT II

**Violation and Deprivation of Plaintiffs' Rights Under the
First & Fourteenth Amendments of the United States Constitution
(*5-Day Verification Deadline Too Short*)**

**(*Relief Requested Pursuant to 42 U.S.C. § 1983 et seq.,
the First and Fourteenth Amendments, and 28 U.S.C. § 2201 et seq.*)**

49.    Plaintiffs repeat and restate the allegations in paragraphs 1-48 as if fully set

forth herein.

50.    As set forth herein, the 5-day verification deadline set forth in 21-A M.R.S.A.

§ 303(2) – and Defendants' application and enforcement of same – places severe burdens on

Plaintiffs' rights to express themselves, to associate politically, and to cast their votes effectively, among others, and is not necessary to further any legitimate state interest.

51.     Pursuant to well-established judicial precedent, the application of such an early deadline to the Plaintiffs – comprised of a minor political party and its members – violates and otherwise serves to deprive Plaintiffs of their rights under the First and Fourteenth Amendments to the United States Constitution.

52.     At all relevant times herein, Defendants were acting in their official capacities under color of law.

53.     Pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. § 2201 et seq., Plaintiffs are entitled to declaratory and injunctive relief as is necessary to fully restore their constitutional rights and end all future deprivations by the Defendants thereof.

54.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Enter a declaratory judgment proclaiming that the 5-day verification deadline set forth in 21-A M.R.S.A. § 303 is unconstitutional, on its face or as applied to the Plaintiffs, in that it violates and otherwise serves to deprive Plaintiffs and thousands of other Maine citizens of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution;

B.      Enter a declaratory judgment proclaiming that Defendants, while acting under color of law, subjected Plaintiffs and/or caused Plaintiffs to be subjected to a deprivation of fundamental rights secured to them by the First and Fourteenth Amendments to

the United States Constitution, rendering them liable to the Plaintiffs' therefore under 42 U.S.C. § 1983 et seq.;

        C.     Enter an injunction requiring the Defendants to take all actions as are necessary to allow Maine voters to enroll as members of the Libertarian Party and to nominate, vote for, and seek elective office as Libertarian Party candidates in the coming general election year, including, without limitation: (1) immediately restoring the enrollment status of all Maine voters previously enrolled in the Libertarian Party who were stripped of their party enrollment by the Secretary in December of 2015; (2) instructing all municipal registrars and clerks to accept the applications of otherwise qualified Maine voters seeking to enroll as members of the Libertarian Party, including but not limited to all applications submitted at any time after December 1, 2015; (3) allowing Plaintiffs to re-certify that they have enrolled at least 5,000 voters in the Libertarian Party within a reasonable time in advance of Maine's June 2016 primary election; and (4) allowing the Libertarian Party to participate in Maine's June 2016 primary election upon verification by the Secretary, within a reasonable time in advance of that election, that there are at least 5,000 Maine voters enrolled in the Libertarian Party.

        D.     Enter an injunction requiring and directing the Defendants to refrain from taking any and all actions that would interfere with the rights of Maine citizens to enroll as members of the Libertarian Party and to nominate, vote for, support, and seek elective office as Libertarian Party candidates in the coming general election year;

        E.     Order Defendant Maine Secretary of State to pay the reasonable attorneys' fees and costs incurred by the Plaintiffs in bringing and prosecuting this action for the purpose of vindicating and enforcing their constitutional rights; and

F.      Award such other and further relief as is just and proper.

## COUNT III

**Violation and Deprivation of Plaintiffs' Rights Under the
First & Fourteenth Amendments of the United States Constitution
(*Denial of Administrative Hearing Prior to Final Disqualification by the Secretary*)**

**(*Relief Requested Pursuant to 42 U.S.C. § 1983 et seq.,
the First and Fourteenth Amendments, and 28 U.S.C. § 2201 et seq.*)**

55.      Plaintiffs repeat and restate the allegations in paragraphs 1-54 as if fully set forth herein.

56.      As set forth herein, the governing statute's failure to afford minor parties and their members the opportunity to an administrative hearing prior to being stripped of their enrollment status and deprived of the right to participate in elections – and Defendants' application and enforcement of same – places severe and unnecessary burdens on Plaintiffs' rights to express themselves, to associate politically, and to cast their votes effectively, among others, and is not necessary to further any legitimate state interest.

57.      Pursuant to well-established judicial precedent, the denial to the Plaintiffs of the opportunity for such a hearing violates and otherwise serves to deprive them of their rights under the First and Fourteenth Amendments to the United States Constitution.

58.      At all relevant times herein, Defendants were acting in their official capacities under color of law.

59.      Pursuant to 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. § 2201 et seq., Plaintiffs are entitled to declaratory and injunctive relief as is necessary to fully restore their constitutional rights and end all future deprivations by the Defendants thereof.

60.      Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Enter a declaratory judgment proclaiming that the lack of any provision in 21-A M.R.S.A. § 303 affording Plaintiffs' the opportunity to an administrative hearing prior to any final disqualification decision or action by the Secretary renders the statute unconstitutional, on its face or as applied to the Plaintiffs, in that it violates and otherwise serves to deprive Plaintiffs and thousands of other Maine citizens of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution;

B.      Enter a declaratory judgment proclaiming that Defendants, while acting under color of law, subjected Plaintiffs and/or caused Plaintiffs to be subjected to a deprivation of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution, rendering them liable to the Plaintiffs therefor under 42 U.S.C. § 1983 et seq.;

C.      Enter an injunction requiring the Defendants to take all actions as are necessary to allow Maine voters to enroll as members of the Libertarian Party and to nominate, vote for, and seek elective office as Libertarian Party candidates in the coming general election year, including, without limitation: (1) immediately restoring the enrollment status of all Maine voters previously enrolled in the Libertarian Party who were stripped of their party enrollment by the Secretary in December of 2015; (2) instructing all municipal registrars and clerks to accept the applications of otherwise qualified Maine voters seeking to enroll as members of the Libertarian Party, including but not limited to all applications submitted at any time after December 1, 2015; (3) allowing Plaintiffs to re-certify that they

have enrolled at least 5,000 voters in the Libertarian Party within a reasonable time in

advance of Maine's June 2016 primary election; and (4) allowing the Libertarian Party to

participate in Maine's June 2016 primary election upon verification by the Secretary, within a

reasonable time in advance of that election, that there are at least 5,000 Maine voters enrolled

in the Libertarian Party.

        D.     Enter an injunction requiring and directing the Defendants

to refrain from taking any and all actions that would interfere with the rights of Maine

citizens to enroll as members of the Libertarian Party and to nominate, vote for, support, and

seek elective office as Libertarian Party candidates in the coming general election year;

        E.     Ordering Defendant Maine Secretary of State to pay the reasonable

attorneys' fees and costs incurred by the Plaintiffs in bringing and prosecuting this action for

the purpose of vindicating and enforcing their constitutional rights; and

        F.     Award such other and further relief as is just and proper.

### COUNT IV

**Violation and Deprivation of Plaintiffs' Rights Under the
First & Fourteenth Amendments of the United States Constitution
(*Unreasonable Delay in Processing Enrollments, Wrongful
Rejection of Enrollments, Untimely Verification of Enrollments, and
Nullification of Previously Accepted Enrollments*)**

**(*Relief Requested Pursuant to 42 U.S.C. § 1983 et seq.,
the First and Fourteenth Amendments, and 28 U.S.C. § 2201 et seq.*)**

61.    Plaintiffs repeat and restate the allegations in paragraphs 1-60 as if fully set

forth herein.

62.    As set forth herein, Defendants and local election officials throughout the state

failed to process Libertarian Party enrollments in a timely and expeditious manner,

wrongfully rejected valid Libertarian Party enrollments, failed to verify the enrollments in a

timely and expeditious manner, and nullified thousands of previously accepted Libertarian Party enrollments.

63.     At all times relevant hereto, all municipal registrars, clerks and other local election officials throughout the state were acting within the scope of their authority as agents of the Secretary of State and the Department.  Pursuant to well established principles of *respondeat superior*, Defendants Secretary of State and the Department are liable for any and all actionable misconduct of their agents while acting within the scope of their authority.

64.     In regard to the allegations set forth herein, Defendants and their agents acted arbitrarily and capriciously in violation of Plaintiffs' rights to due process and equal protection secured by the First and Fourteenth Amendments to the United States Constitution.

65.     Also in regard to the allegations set forth herein, Defendants wrongfully deprived Plaintiffs of their rights to express themselves, to associate politically, and to cast their votes effectively, among others, secured by the First and Fourteenth Amendments to the United States Constitution.

66.     At all relevant times herein, Defendants and their agents – municipal registrars, clerks and other local election officials throughout the state – were acting in their official capacities under color of law.

67.     Pursuant to 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. § 2201 et seq., Plaintiffs are entitled to declaratory and injunctive relief as is necessary to fully restore their constitutional rights and end all future deprivations by the Defendants thereof.

68.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      Enter a declaratory judgment proclaiming that the actions and omissions of Defendants and their agents in failing to process Libertarian Party enrollments in a timely and expeditious manner, wrongfully rejecting valid Libertarian Party enrollments, failing to verify the enrollments in a timely and expeditious manner, and nullifying thousands of Libertarian Party enrollments, deprived Plaintiffs of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution;

B.      Enter a declaratory judgment proclaiming that Defendants, while acting under color of law, subjected Plaintiffs and/or caused Plaintiffs to be subjected to a deprivation of fundamental rights secured to them by the First and Fourteenth Amendments to the United States Constitution, rendering them liable to the Plaintiffs therefor under 42 U.S.C. § 1983 et seq.;

C.      Enter an injunction requiring the Defendants to take all actions as are necessary to allow Maine voters to enroll as members of the Libertarian Party and to nominate, vote for, and seek elective office as Libertarian Party candidates in the coming general election year, including, without limitation: (1) immediately restoring the enrollment status of all Maine voters previously enrolled in the Libertarian Party who were stripped of their party enrollment by the Secretary in December of 2015; (2) instructing all municipal registrars and clerks to accept the applications of otherwise qualified Maine voters seeking to enroll as members of the Libertarian Party, including but not limited to all applications submitted at any time after December 1, 2015; (3) allowing Plaintiffs to re-certify that they have enrolled at least 5,000 voters in the Libertarian Party within a reasonable time in advance of Maine's June 2016 primary election; and (4) allowing the Libertarian Party to

participate in Maine's June 2016 primary election upon verification by the Secretary, within a reasonable time in advance of that election, that there are at least 5,000 Maine voters enrolled in the Libertarian Party.

        D.     Enter an injunction requiring and directing the Defendants to refrain from taking any and all actions that would interfere with the rights of Maine citizens to enroll as members of the Libertarian Party and to nominate, vote for, and seek elective office as Libertarian Party candidates in the coming general election year;

        E.     Ordering Defendant Maine Secretary of State to pay the reasonable attorneys' fees and costs incurred by the Plaintiffs in bringing and prosecuting this action for the purpose of vindicating and enforcing their constitutional rights; and

        F.     Award such other and further relief as is just and proper.

Dated at Portland, Maine this 4th day of January, 2016.

/s/ John H. Branson

BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
Tel. (207) 780-8611
jbranson@bransonlawoffice.com

*Counsel for the Plaintiffs*